UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
RUSSELL MEINKEN, as Guardian for
JULIA MEINKEN,
                                  Plaintiff,                        Civil Action No.:

      -against-

GROUP HEALTH INCORPORATED, and
EMBLEM HEALTH,


                                Defendants.
-----------------------------------------------------------------X

## COMPLAINT

By way of this Complaint, and to the best of its knowledge, information and belief, formed upon a reasonable inquiry under the circumstances, Plaintiff Russell Meinken ("Plaintiff"), as Guardian for Julia Meinken ("Patient"), brings this action against Defendants Group Health Incorporated ("GHI") and Emblem Health ("Defendants").[1] Defendants underwrite the health insurance under which the Patient received health care coverage. Plaintiff is a plan participant of the City of New York Employees and Retirees Comprehensive Benefits Plan (the "Plan").

This is an action under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and its governing regulations, concerning Defendants' under-reimbursement to Plaintiff for numerous surgical and other services related to the Patient's onset of an especially virulent and life-threatening recurrent case of childhood leukemia, acute lymphoblastic leukemia. This condition is a fast-growing blood cancer in which the body makes abnormal lymphocytes (a type of white blood cell), which grow quickly and crowd out the patient's bone marrow. She had to have chemotherapy, which was provided in a facility at the University of North Carolina

---

[1] Plaintiff signed a HIPAA release giving permission to reproduce otherwise protected healthcare information in this complaint.

1

Hospital (the "Hospital"), as well as numerous other services and procedures, including several surgeries.

2. Plaintiff also had Blue Cross Blue Shield ("BCBS") coverage under the Plan which was coordinated with coverage under GHI. This Complaint does not deal with those claims covered under BCBS.

3. Plaintiff sought reimbursement for the Hospital's in-patient rate when she had to be admitted, and the hospital's facility's charge, which was billed to Defendants. The amount of the charge was tied to the amount of time the Patient spent at the facility, which was based on the amount of chemotherapy she was prescribed on a given day.

4. In each case, Defendants denied the charge, paying $0.

5. Plaintiff, through his Authorized Representative, appealed 39 of these denied claims.

6. The Certificate of Insurance for the Plan states that "GHI will acknowledge receipt of your appeal within fifteen (15) days of GHI's receipt of your appeal."

7. Defendants did not acknowledge receipt of Plaintiff's appeals within 15 days of its receipt of Plaintiff's appeals and has not done so to date.

8. In a post-service claim appeal, Defendants are required to decide appeals within a maximum of 60 days of their receipt of the appeals.

9. Under Plaintiff's Plan, if Defendants fail to respond to Plaintiff's appeals within this time period, "the service will be deemed approved."

10. Plaintiff sent appeals on June 5, 2018 and July 10, 2018. More than 60 days have elapsed, and Defendants have not responded to Plaintiff's appeals. Accordingly, all the services represented by these appeals must be deemed approved and full payment must be made.

11. The amount of unpaid benefits represented by these appeals and deemed to be approved under Plaintiff's Plan is $160,019.84.

## JURISDICTION

12. The Court has subject matter jurisdiction over Plaintiff's ERISA claims under 28 U.S.C. § 1331 (federal question jurisdiction).

13. The Court has personal jurisdiction over the parties because Plaintiff submits to the jurisdiction of this Court, and each Defendant, both GHI and Emblem Health, systematically and continuously conducts business in the State of New York, and otherwise has minimum contacts with the State of New York sufficient to establish personal jurisdiction over each of them.

14. Venue is appropriately laid in this District under 28 U.S.C. § 1391 because (a) GHI and Emblem Health both reside, are found, have an agent, and transact business in the Southern District, and (b) both GHI and Emblem Health conduct a substantial amount of business in the Southern District, including marketing, advertising and selling insurance products, and insure and administer group healthcare insurance plans both inside and outside the Southern District, including from offices located in the Southern District.

## PARTIES

15. Plaintiff, Russell Meinken as guardian for Julia Meinken, is a plan participant of the City of New York Employees and Retirees Comprehensive Benefits Plan. His daughter, Julia Meinken, is a beneficiary of the Plan. Russell Meinken is a retired New York City police officer. He retired due to an on-the-job disability injury, having received several meritorious and excellent police duty medals.

16. Defendants GHI and Emblem Health are health care insurance companies with offices located at 55 Water Street, New York, New York. GHI is a subsidiary of Emblem Health.

They are the insurer for the City of New York Employees and Retirees Comprehensive Benefits Plan.

## FACTUAL ALLEGATIONS

17.     Plaintiff made 39 claims to Defendant, which were billed by the Hospital, as follows:

| Date of Service | Type of Service | Provider | Billed Amt | Paid Amt |
|---|---|---|---|---|
| 9-16-14 | Facility | University of NC Hospital | $1,310.10 | $0 |
| 9-3-15 | Facility | University of NC Hospital | $1,310.10 | $0 |
| 2-3-15 | Facility | University of NC Hospital | $1,310.10 | $0 |
| 2-3-15[2] | Facility | University of NC Hospital | $1,310.10 | $0 |
| 5-27-15 | Facility | University of NC Hospital | $958.25 | $0 |
| 6-24-15 | Facility | University of NC Hospital | $745.25 | $0 |
| 7-29-15 | Facility | University of NC Hospital | $376.00 | $0 |
| 3-31-15 | Facility | University of NC Hospital | $6,893.30 | $0 |
| 8-26-15 | Facility | University of NC Hospital | $317.00 | $0 |
| 8-19-14 | Facility | University of NC Hospital | $1,478.10 | $0 |
| 10-2-13 | Facility | University of NC Hospital | $1,700.84 | $0 |
| 10-29-13 | Facility | University of NC Hospital | $2,501.66 | $0 |
| 1-21-14 | Facility | University of NC Hospital | $2,606.26 | $0 |
| 10-14-14 | Facility | University of NC Hospital | $2,976.50 | $0 |
| 3-17-17 | Facility | University of NC Hospital | $317.00 | $0 |
| 4-29-15 | Facility | University of NC Hospital | $745.25 | $0 |

---

[2] Different claim number.

| | | | | |
|---|---|---|---|---|
| 12-9-14 | Facility | University of NC Hospital | $2,076.10 | $0 |
| 7-29-15 | Facility | University of NC Hospital | $376.00 | $0 |
| 6-24-15 | Facility | University of NC Hospital | $745.25 | $0 |
| 5-21-14 | Facility | University of NC Hospital | $747.85 | $0 |
| 9-24-12 | Facility | University of NC Hospital | $375.00 | $0 |
| 9-6-13 | Facility | University of NC Hospital | $2,482.25 | $0 |
| 5-14-13 | Facility | University of NC Hospital | $3,514.19 | $0 |
| 1-5-15 | Facility | University of NC Hospital | $5,361.25 | $0 |
| 3-5-14 | Facility | University of NC Hospital | $1,509.67 | $0 |
| 2-25-14 | Facility | University of NC Hospital | $2,630.77 | $0 |
| 4-22-14 | Facility | University of NC Hospital | $3,817.45 | $0 |
| 4-22-14[3] | Facility | University of NC Hospital | $3,817.45 | $0 |
| 3-11-13 | Facility | University of NC Hospital | $10,755.77 | $0 |
| 3-15-13 | Facility | University of NC Hospital | $10,608.77 | $0 |
| 3-18-13 | Facility | University of NC Hospital | $10,907.77 | $0 |
| 4-2-13 | Facility | University of NC Hospital | $7,553.80 | $0 |
| 3-20-13 | Facility | University of NC Hospital | $12,771.41 | $0 |
| 3-5-13 | Facility | University of NC Hospital | $5,100.03 | $0 |
| 5-14-13 | Facility | University of NC Hospital | $3,514.19 | $0 |
| 1-2/1-3-13 | In hospital medical care | University of NC Hospital | $17,366.99 | $0 |
| 6-11-13 | Facility | University of NC Hospital | $1,988.71 | $0 |
| 2-12/2-15-13 | In hospital medical care | University of NC Hospital | $13,847.48 | $0 |

---

[3] Different claim number.

5

| TOTAL | | | | $160,019.84 |

18. Defendants gave several purported reasons for denying these charges. For the in-hospital medical care with date of service 2-12-13 through 2-15-13, Defendants stated that its "hospital plan does not cover this type of service."

19. This is false. The Plaintiff's Certificate of Service states that "GHI covers hospital services ordinarily covered by Blue Cross." Coverage for Hospital charges include room and board.

20. For the in-hospital medical care with dates of service 2-3-13 through 1-6-13, Defendants stated: "resubmit claim to subscriber's hospital carrier for processing."

21. As stated above, there was no legitimate basis for this denial. GHI covered this charge. If Defendants wanted to coordinate the amount of excess coverage between them and Blue Cross, it was their responsibility, through the process of Coordination of Benefits ("COB") and, if necessary, subrogation.

22. For most of the remaining claims, including all the facility claims, Defendants also stated: "resubmit claim to subscriber's hospital carrier for processing," or "submit primary carrier's voucher to our medical unit."

23. Under Meinken's Certificate of Insurance, outpatient hospital charges were covered. These denials based on the need to resubmit the claim to BCBS were illegitimate. Moreover, Defendants were the primary carrier. Plaintiff's secondary carrier was Medicare.

24. In one claim with date of service 4-29-15, Defendants denied the charges using the reason code: "Please submit the Explanation of Medicare Benefits."

25.     For Plaintiff, Medicare was his secondary carrier and he may submit claims to Medicare only after submitting claims to Defendants. Defendants wrongly denied the claim as the primary carrier requiring the plan participant to submit the claim to his secondary carrier first.

26.     Defendants violated ERISA when they gave incorrect, unreasonable and invalid purported reasons for their under-reimbursements in their EOB and failed to provide any reason for their determination in their appeal response.

27.     29 C.F.R. § 2560.503-1(g) provides as follows:

**Manner and content of notification of benefit determination.**

(1) The plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination. Any electronic notification shall comply with the standards imposed by 29 CFR 2520 2520.104b-1(c)(1)(i), (iii), and (iv). The notification shall set forth, in a manner calculated to be understood by the claimant -

(i) The specific reason or reasons for the adverse determination;

(ii) Reference to the specific plan provisions on which the determination is based;

(iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

(iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;

(v) In the case of an adverse benefit determination by a group health plan -

(A) If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request.

28.     Defendants provided none of the information required by 29 C.F.R. § 2560.5031(g), in violation of ERISA and the rules promulgated thereunder.

29. Plaintiff appealed each of these claims to Defendants through his Authorized Representative, 29 C.F.R. § 2560.502-1(b)(4). A signed Authorized Representative Form was attached to each appeal.

30. The appeal also requested, pursuant to 29 C.F.R. § 2560.503-1(g), the following information: (a) the specific reason for the adverse coverage determination; (b) reference to the specific plan provision on which the determination is based; and (c) any internal rule, guideline, protocol, or other similar criterion relied upon in making the adverse determination.

31. Defendants provided none of the information required by 29 C.F.R. § 2560.503-1(g), in violation of ERISA and the rules promulgated thereunder.

32. Under ERISA, when an insurer fails to follow the procedures set out in the Plan SPD of Certificate of Insurance, the claimant is deemed to have exhausted his administrative remedies.

33. Deemed exhaustion is set out in 29 C.F.R. § 2560-503-1, which states:

> [I]n the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of [ERISA] on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

34. In each case Defendants failed to respond to each of the 39 appeals of Plaintiff's claims. This represents the exhaustion of administrative remedies under ERISA and deemed approval under Plaintiff's Certificate of Insurance.

35. The Certificate of Insurance for the Plan states that "GHI will acknowledge receipt of your appeal within fifteen (15) days of GHI's receipt of your appeal."

36. Defendants did not acknowledge receipt of Plaintiff's appeals within 15 days of its receipt of Plaintiff's appeals and has not done so to date.

37. In a post-service claim appeal, Defendants are required to decide appeals within a maximum of 60 days of their receipt of the appeals.

38. Under Plaintiff's Plan, if Defendants fail to respond to Plaintiff's appeals within this time period, "the service will be deemed approved."

39. Since Defendants have not responded, each of the services represented by these 39 appeals must be deemed approved and full payment made.

40. Defendants did pay Plaintiff directly for certain claims not included here, including claims dating from 2013, without further explanation.

**Julia Meinken's Cancer Story as Told by Julia Meinken**

41. Julia Meinken was diagnosed with leukemia at age 11 and sought treatment at the UNC Chapel Hill Children's Cancer Hospital, where she spent the next 2 ½ half years of her life receiving chemotherapy and radiation treatments.

42. Presently she is graduating from high school and applying to college. The following is an excerpt from her application essay to UNC Chapel Hill, the same institution that treated her:

43. All at once my life was suddenly filled with aggressive drugs running through my veins, and a diet of different shaped pills for breakfast, lunch and dinner. I had spent hours sitting in the hospital getting spinal taps and being infused with drugs. Shortly after was when I started to feel my hair, along with my identity, slowly slipping through my fingers and down the drain of the shower. When I looked in the mirror I didn't recognize the pale, hairless, cancer ridden body looking back at me.

But this in no way stopped my determination of powering through this disease, *which would soon be shown in fine print across the blue bracelets that were given to all my supporters. My brother came home telling me how the blue bracelets were appearing in every corner of the school.*

Family and friends would always tell me how brave and strong I was through it all, but I didn't see it that way. I saw it as being something I was obligated to do, something anyone would do given my situation. I had learned to fight.



### CLAIM AGAINST DEFENDANTS FOR UNPAID BENEFITS UNDER EMPLOYEE BENEFIT PLAN GOVERNED BY ERISA

44.     Defendants are obligated to pay benefits to Plan participants and beneficiaries in accordance to the terms of the Plan, and in accordance with ERISA.

45.     Defendants violated their legal obligations under this ERISA-governed plan when they (a) under-reimbursed Plaintiff for the services they provided to Patient, a Plan beneficiary, in violation of the terms of the Certificate of Insurance and in violation of ERISA § 502(a)(l)(B), 29 U.S.C. § 1132(a)(l)(B), and when they (b) failed to provide the Certificate of Insurance to Plaintiff, the plan participant.

46.     Plaintiff seeks unpaid benefits and statutory interest back to the date Plaintiff's claim was originally submitted to Defendants. Plaintiff also seeks attorneys' fees, costs, prejudgment interest and other appropriate relief against Defendants.

**WHEREFORE**, Plaintiff demands judgment in its favor against Defendants as follows:

(a)     Ordering Defendants to recalculate and issue unpaid benefits to Plaintiff;

   (b) Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees, costs and expenses in amounts to be determined by the Court;

   (c) Awarding prejudgment interest; and

   (d)  Granting such other and further relief as is just and proper.

Dated:  September 14, 2018

                /s/ Robert J. Axelrod
                AXELROD LLP
                830 Third Avenue, 5th floor
                New York, NY 10022
                (646) 448-5263
                rjaxelrod@axelrodllp.com